UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,
LOCAL LODGE PM2848, DEFINED BENEFIT
PENSION FUND,

CASE NO. 06-10398

HON. MARIANNE O. BATTANI

        Plaintiff,

v.

THE AMERICAN TEAM, INC., formerly known
as AMERICAN MODEL AND PATTERN
COMPANY

        Defendant.
                                        /

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now before the Court is Plaintiff's Motion for Partial Summary Judgment as to Interim Payment of Withdrawal Liability (Doc. # 6). The Court has reviewed the pleadings[1] and finds oral argument will not aid in the resolution of this motion. See E. D. Mich. LR 7.1(e)(2). For the reasons that follow, the Court **GRANTS** Plaintiff's motion.

**I. INTRODUCTION**

Plaintiff, International Association of Machinists and Aerospace Workers, Local Lodge PM2848, Defined Benefit Pension Fund ("IAM Pension Plan"), is a multiemployer defined benefit pension plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. § 1101 et seq. See Pl.'s Ex. C. Defendant withdrew from

---

[1] Defendant informed the court that it would not file a response to Plaintiff's motion and the deadline for doing so has passed.

the IAM Pension Plan on August 31, 2001, as part of a mass withdrawal. Pl.'s Ex. B. The IAM Pension Plan assessed initial withdrawal liability in the amount of $24,531.27 on October 22, 2001. Pl.'s Ex. E. In accordance with 29 U.S.C. §1399(c)(1)(D)(ii), the IAM Pension Plan recalculated Defendant's withdrawal liability and assessed redetermined liability in the amount of $46,554.27 on November 29, 2001. Pl.'s Ex. F.

In August 2003, the IAM Pension Plan terminated when all remaining contributing employers withdrew en masse during the Plan year that ended. Pl.'s Ex. G, September 24, 2003 letter. Pursuant to 29 U.S.C. § 1399(c)(1)(D)(ii), Defendants's withdrawal liability was reallocated in the amount of $50,095.92. See Pl.'s Ex. A, December 7, 2004 letter. The total withdrawal liability was $96,650.19. See id. Defendant requested additional information from Plaintiff and objected to the assessment of reallocated withdrawal liability. Pl.'s Ex. H.

On September 6, 2005, Defendant submitted a partial payment with a letter asserting that it had completed its obligations under the initial withdrawal liability assessment. Pl.'s Ex. I. Plaintiff notified Defendant on October 27, 2005, that its payment for reallocated withdrawal liability was overdue and that the remaining payments would be accelerated unless payment was received within sixty days. Pl.'s Ex. J. Defendant has not paid its reallocated withdrawal liability to date. Pl.'s Ex. B. According to Plaintiff, the outstanding liability obligation is $68,745.08, plus statutory interest. Id.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." As the United States Supreme Court has ruled: In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002). "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application

of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant. Anderson, 477 U.S. at 252.

### III. ANALYSIS

Congress passed the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") in 1980, to establish a system for calculating and collecting the unfunded vested benefit ("UVB") liability from employers who withdraw from pension plans. See 29 U.S.C. § 1381 et seq. Prior to the Act's passage, a withdrawing employer was not necessarily required to pay its share of unfunded, vested benefits. Milwaukee Brewery Workers'

-4-

Pension Plan v. Jos. Schlitz Brewing Co., 513 U.S. 414, 416-17 (1995).

Pursuant to the MPPAA, when employers withdraw from a multiemployer pension plan regulated by ERISA, they must compensate the plan "for benefits which have already vested with the employees at the time of the employer's withdrawal." United Foods, Inc. v. W. Conference of Teamsters Pension Trust Fund, 816 F.Supp. 602, 606 (N.D. Ca. 1993), aff'd, 41 F.3d 1338 (9th Cir. 1994).  "An employer's withdrawal liability is its 'proportionate share of the plan's unfunded vested benefits', that is, the difference between the present value of vested benefits (benefits that are currently being paid to retirees and that will be paid in the future to covered employees who have already completed some specified period of service, 29 U.S.C. § 1053, and the current value of the plan's assets." 29 U.S.C. §§ 1381, 1391. Concrete Pipe & Products v. Construction Laborers Pension Trust, 508 U.S. 602, 608 (1993).

To succeed on a claim for interim withdrawal liability payment, a plaintiff must show that it complied with the statutory requirements.  It must determine that an employer has partially or completely withdraw from a multiemployer plan; determine the amount of the employer's withdrawal liability; notify the employer of the amount of liability and the payment schedule; and demand payment according to the schedule. Bowers of NYSA-ILA Pension Trust Fund v. Transportes Navierors Ecuadorianos (Transvare), 719 F.Supp 166, 172 (S.D. N.Y 1989), citing 29 U.S.C. §§ 1382, 1399(b)(1).

The facts as represented by Plaintiff are unchallenged, and Plaintiff's submissions demonstrate that it satisfied the requirements.  Specifically, the exhibits show that Plaintiff calculated liability, notified Defendant of the amount due, issued a payment schedule, and demanded payment.  Defendant is required to pay its withdrawal liability assessment even

while contesting it.  Marvin Hayes Lines, Inc. v. Central States, Southeast & Southwest Areas Pension Fund, 814 F.2d 297, 301 (6th Cir. 1987) (observing that "[i]t is clear from a reading of the statutory sections dealing with withdrawal liability that the intent of Congress was to secure the funds as soon as possible and iron out the details and disputes later").  Therefore, Plaintiff has demonstrated that there is no genuine issue of material fact as to Defendant's withdrawal liability or its entitlement to interim payments despite "the pendency of any dispute."  Id.

## IV.  CONCLUSION

Accordingly, Plaintiff's motion for partial summary judgment is **GRANTED.**  Defendant is hereby ordered to pay $68,745.08, plus statutory interest.

**IT IS SO ORDERED**.


     s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


Dated:   May 19, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Lawrence Breskin and David Gunsberg on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
Deputy Clerk